THE PEOPLE v. CHRISTOPHER O'BRIEN.

[See 92 Mich. 17.]

*Criminal law—Trial—Conduct of prosecuting attorney.*

1. It is prejudicial to the rights of a respondent for the prosecuting attorney to call upon the jurors to act as detectives, and for the court, when its attention is called to that kind of argument, to say to respondent's counsel, "Take an exception."

2. The conduct of a prosecuting attorney in repeating leading questions when objected to, and in criticising the witnesses for the defense in the presence of the jury, and asking one of them if he knew the penalty for perjury, is open to grave criticism.

3. Where, at the suggestion of the prosecuting attorney, it is agreed to submit a case without argument, the court should not permit that officer, on the pretense of answering the respondent's requests to charge, to argue the case upon the law and facts, against the protests of the counsel for the respondent.

Error and *certiorari* to the recorder's court of Detroit. (Chambers, J.) Argued June 29, 1893. Decided July 26, 1893.

Respondent was convicted of manslaughter, and sentenced to imprisonment in the State prison for 15 years. Judgment reversed, and a new trial ordered. The facts are stated in the opinion.

*James H. Pound,* for respondent.

*A. A. Ellis,* Attorney General, and *Samuel W. Burroughs,* ex-Prosecuting Attorney, for the people.

LONG, J. This case was in this Court at the April term, 1892, and is reported in 92 Mich. 17. Respondent had been convicted of murder in the second degree, and the case was reversed, and sent down for another trial. The second trial has been had, resulting in a conviction of manslaughter. The case comes up again upon a writ of error, aided by an ancillary writ of *certiorari,* which brings up the proceedings on the argument of the case before the jury and the rulings of the court thereon, which were not included in the bill of exceptions, but to which the court below now makes return.

It appears from the affidavit for the writ of *certiorari* and the return thereto that an agreement was made between the prosecuting attorney and counsel for respondent that the case should be submitted to the jury without argument. Counsel claims a violation of this agreement by the prosecuting attorney, to the prejudice of the respondent. After the testimony had closed, the prosecuting attorney voluntarily suggested to counsel for respondent that the case be submitted to the jury under the charge of the court, without argument. Counsel agreed to this, and the case was adjourned until the next day, when respondent's counsel presented certain requests for the court to charge, and read them to the court. The prosecuting attorney, in response to these requests, with a pretense of answering them, and against the protest of counsel for respondent, then addressed

himself to the court and jury, arguing the questions of fact to the jury. Counsel for respondent protested that the case was to be submitted without argument, and excepted to the ruling of the court in permitting this course to be taken. The prosecuting attorney, however, was permitted to proceed, and did proceed, with the argument upon the merits, in which he dwelt to some considerable extent upon the testimony of Dr. Siebert, arguing that his testimony showed conclusively that the respondent was guilty as charged. When this case was in this Court before, it was reversed, on the ground that the statements made by the deceased to Dr. Siebert, and to which Dr. Siebert was permitted to testify, were no part of the *res gestœ*, and incompetent. The people, in order to make this testimony competent, on the present trial claimed by the doctor that the deceased said he was about to die from his wounds, and the testimony of Dr. Siebert as to what deceased said was then admitted as a dying declaration. Dr. Siebert testified that deceased told him that—

"There had been a fight over at his saloon, and that he had been cut with a knife by the defendant, Mr. O'Brien."

The prosecuting attorney, in his further address, dwelt upon this part of the case. In speaking of the testimony of Dr. Siebert, as to the conversation with deceased, he stated that the deceased said:

"I got them from the hands of Chris. O'Brien. I got these mortal wounds from a knife in his hands."

Among other things, the prosecuting attorney said to the jury:

"Now, gentlemen of the jury, of course the defendant will claim self-defense, and I want you to aid us in the trial of this cause. Pay strict attention to all the testimony, both *pro* and *con*. Put yourselves in the manner of jurors and detectives."

Respondent's counsel called the attention of the court to

the use of this language, and said he would take an exception to the invitation to the jury to act as detectives, in addition to their other duties, when the court responded: "Take an exception." The prosecuting attorney thereupon qualified the statement by adding: "In detecting the evidence, it is your duty as jurors."

It is evident that the court permitted the prosecuting attorney to go over the merits of such parts of the case, and argue them fully to the jury. This argument, undoubtedly, had its effect upon the jury. It was a plea for the conviction of the respondent, and a statement that there could be no question of doubt as to the facts or the law. It was an undue advantage over the respondent, which the court should not have permitted. It was prejudicial to the rights of the respondent for the prosecuting officer of the county to call upon the jurors to act as detectives, and for the court, when its attention was called to that kind of argument, to say to counsel, "Take an exception." The duty of the jury was to listen to the testimony, the arguments of counsel, and the charge of the court, and, when they retired for deliberation, to give the respondent the benefit of every reasonable doubt.

Perhaps the line of argument indulged in by the prosecuting attorney would not have been as potent' for conviction had it not been for his conduct throughout the trial, when his manner of conducting the examination of witnesses was open to grave criticism. His questions were leading, and, when objected to, were repeated, and the court itself, it seems, was unable many times to prevent it. The witnesses for the defense were criticised in the presence of the jury. John Luth was asked if he knew the penalty of perjury. The court instructed the prosecuting attorney that he must not say to the witnesses for the defense that they were committing perjury; if they were, he would have a right to contradict them by other testimony. The prosecuting attor-

ney responded that he would take that course, but he knew he was right. The conduct of the trial by the prosecuting attorney was well calculated to prejudice the jury against the respondent, and in the closing argument advantage was taken of it.

We do not think the respondent has had that fair and impartial trial which is guaranteed by the Constitution.

The conviction must be set aside, and a new trial granted.

HOOKER, C.J., McGRATH and MONTGOMERY, JJ., concurred.    GRANT, J., did not sit.